UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JERRY WARREN,

                    Plaintiff,

                                                            **OPINION AND ORDER**

         -against-
                                                            15 Civ. 8423 (JCM)

LT. JOHN EWANCIW, SGT. "SAMMY" DOE,
JOHNS DOES 1-10,

                    Defendants.
------------------------------------------------------------X

       Plaintiff Jerry Warren ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against

Defendants Lieutenant John Ewanciw, Sgt. Sammy Doe and John Does 1-10. (Docket No. 1).

Defendant Lieutenant Ewanciw ("Defendant") has moved for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure ("Motion"). (Docket No. 14).  Plaintiff opposed

the Motion, (Docket No. 25), and Defendant replied, (Docket No. 33).  For the reasons set forth

below, Defendant's Motion is granted in part and denied in part.[1]

# I.  BACKGROUND

## A.  Procedural Background

       On October 26, 2015, Plaintiff commenced this action seeking damages pursuant to

Section 1983 for unlawful detention, unlawful entry and search, excessive force and deliberate

indifference to his medical needs. (Docket No. 1).  Since the inception of this action, the John

Doe defendants have neither been identified, nor replaced with the intended defendants.

Lieutenant Ewanciw is the only identified defendant.  Following the completion of discovery,

Defendant filed a motion for summary judgment, (Docket No. 14), accompanied by a

---

[1] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 11).

memorandum of law, ("Def. Br.") (Docket No. 16), a statement of facts pursuant to Local Civil Rule 56.1, ("Def. 56.1") (Docket No. 15), affidavits, excerpts from deposition transcripts and supporting exhibits, (Docket Nos. 17–22).

Plaintiff's opposition to Defendant's motion includes a memorandum of law, ("Pl. Br.") (Docket No. 25), a response to Defendant's Rule 56.1 Statement, ("Pl. 56.1 Resp.") (Docket No. 27), a Rule 56.1 Counterstatement, ("Pl. 56.1") (*id.*), affidavits, full deposition transcripts and supporting exhibits, (Docket Nos. 26, 28). Defendant's reply includes a memorandum of law, ("Def. Reply") (Docket No. 33), a response to Plaintiff's 56.1 Counterstatement, ("Def. 56.1 Resp.") (Docket No. 31), and an additional affidavit. (Docket No. 32).

## B. Facts

The following facts are gathered from Defendant's 56.1 Statement, Plaintiff's 56.1 Response and Counterstatement, Defendant's 56.1 Response to Plaintiff's Counterstatement, the exhibits attached to the parties' submissions, and the affidavits submitted by the parties in support of their contentions.[2] The facts are construed in the light most favorable to Plaintiff as the non-moving party. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018). The facts are not in dispute, unless otherwise noted.

On October 9, 2014, New York agencies issued a be-on-the-lookout ("BOLO") notification because of an incident that occurred in Otisville, New York, wherein two armed African American males shot a released prisoner as he left the Otisville correctional facility. (Ewanciw Dep.[3] at 115–17). The BOLO also noted that the suspects fled the scene in a white vehicle with an out-of-state license plate. (*Id.* at 116–17). Members of the Middletown Police

---

[2] All page number citations to the record refer to the ECF page number unless otherwise noted.

[3] Refers to Lieutenant Ewanciw's deposition transcript. (Docket Nos. 26–2, 26–3). Citations to deposition transcripts refer to the deposition page rather than the ECF page number.

Department received this information either through the BOLO notification, or through radio calls related to the notification. (*Id.* at 115).

Later that same day, Vanessa Pla, an employee of Enterprise Rent-A-Car, called 911 following a phone conversation with Plaintiff about the status of a rented vehicle. (Def. 56.1 at ¶¶ 4, 9); (Pl. 56.1 Resp. at ¶¶ 4, 9).[4] At the time, Plaintiff resided on the first floor of 31 Wickham Avenue in Middletown, New York. (Def. 56.1 at ¶ 10); (Pl. 56.1 Resp. at ¶ 10). Ms. Pla, who had prior interactions with Plaintiff, informed Orange County 911 and Middletown police dispatch that a "victim" was shot and suffering from a gunshot wound at 31 Wickham Avenue. (Def. Ex. A);[5] (Pl. Ex. 6 at 1485KB).[6] Ms. Pla also stated that the victim sounded very weak, the suspects had possibly left, and that she called for an ambulance. (*Id.*).

Based on this information, Lieutenant Ewanciw, Sergeant Khalil, Officer Neilson, additional Middletown Police officers, New York State Troopers, and an ambulance responded

---

[4] Plaintiff's response to paragraph four of Defendant's 56.1 Statement is one of many denials that "quibble[s] with [Defendant's] phraseology, but do[es] not address the factual substance asserted by Defendant[]." *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (addressing similar conduct from Plaintiff's counsel). In other instances, Plaintiff's response to Defendant's 56.1 Statement "improperly interject arguments and/or immaterial facts in response to facts asserted by Defendant[], often speaking past [Defendant's] asserted facts without specifically controverting those same facts ." *Id.*; (*see, e.g.*, Pl. 56.1 Resp. at ¶¶ 14, 41, 43, 46-48). Thus, where Plaintiff asserted denials "that do not actually deny or refute the specific facts asserted by Defendant[]," the Court incorporates Defendant's fact "where the record evidence duly supports [Defendant's] contentions." *Id.* at 421.

[5] Refers to the supporting deposition signed by Vanessa Pla. (Docket No. 17–1). Plaintiff objects to the admissibility of Ms. Pla's supporting deposition as inadmissible hearsay. (*See* Sussman Aff. at ¶ 4). Plaintiff's objection is unfounded because Ms. Pla's supporting deposition is based on her personal knowledge and sworn under penalty of perjury. *See* Fed. R. Civ. P. 56(c)(4). Plaintiff further avers that he did not actually say he was shot. (Pl. 56.1 Resp. at ¶ 6). As discussed more fully *infra*, it is immaterial that Ms. Pla misheard Plaintiff for the purposes of this Motion unless circumstances raise doubt as to her veracity. *See Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 419 (S.D.N.Y. 2002) ("Probable or reasonable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information.").

[6] Refers to audio recordings of 911 dispatch communications concerning the incident at issue. (Docket No. 26–7). Citations to the 911 audio recordings are identified by their file size.

to 31 Wickham Avenue shortly after 3:00 p.m.[7] (Def. 56.1 at ¶¶ 14–16); (Ewanciw Dep. at 11–12). In total, approximately 15 to 20 police officers responded to the scene. (Pl. 56.1 at ¶ 171); (Def. 56.1 Resp. at ¶ 171). The responding officers did not know whether the information provided in Ms. Pla's 911 call was connected to the Otisville incident. (Ewanciw Dep. at 63). Subsequent police dispatch communications noted that the victim's name was Jerry Warren, (Pl. Ex. 6 at 1469KB, 1157KB), and that he instructed Ms. Pla not to call the police, (*id.* at 1360KB); (Ewanciw Dep. at. ¶¶ 54–55). Upon arrival at the scene, Sergeant Khalil used his patrol car to block westbound traffic on Wickham Avenue while other police officers used tape to set up a perimeter. (Def. 56.1 at ¶ 18); (Pl. 56.1 Resp. at ¶ 18). Officer Neilson informed Lieutenant Ewanciw that he saw someone peek through a window shade in Plaintiff's residence. (Def. 56.1 at ¶ 19); (Ewanciw Dep at 14–15). Officer Kristopher Bailey also observed a male subject peek his head out of a small window. (Bailey Aff.[8] at ¶ 2). Lieutenant Ewanciw observed that the vehicle in the driveway "matched or was similar to the vehicle" reportedly used in the Otisville shooting earlier that day. (Def. 56.1 at ¶ 21); (Ewanciw Dep. at 14). Lieutenant Ewanciw also spoke with some of the residents in the area, who were unaware of any gunshots. (Pl. 56.1 at ¶¶ 154–55); (Def. 56.1 Resp. at ¶¶ 154–55). Following these observations, police officers made several calls towards Plaintiff's residence announcing their presence and instructing anyone inside to exit. (Def. 56.1 at ¶ 22); (Pl. 56.1 Resp. at ¶ 22).

Plaintiff was home alone and feeling both extremely weak and ill. (Pl. 56.1 at ¶¶ 8, 16); (Def. 56.1 Resp. at ¶¶ 8, 16). While unknown to Plaintiff at the time, Plaintiff suffered from diabetes. (Def. 56.1 at ¶ 33); (Pl. 56.1 Resp. at ¶ 33). Plaintiff was also recovering from knee

---

[7] Lieutenant Ewanciw initially testified that he was told that the suspects had left Plaintiff's residence. (Ewanciw Dep. at 16). However, shortly thereafter, Ewanciw clarified that he did not, in fact, know whether the suspects were still at Plaintiff's residence. (*Id.* at 22).

[8] Refers to the affidavit signed by Middletown Police Officer Kristopher Bailey. (Docket No. 20).

surgery. (*Id.*). As Plaintiff walked into the living room, he heard a megaphone calling the name "Jerome Mack." (Pl. 56.1 at ¶ 15); (Def. 56.1 Resp. at ¶ 15). After the police made several announcements, Plaintiff opened the front door and exited his residence. (Def. 56.1 at ¶ 35); (Pl. 56.1 Resp. at ¶ 35). Lieutenant Ewanciw announced on the police radio "possible victim coming out of the house." (Pl. 56.1 at ¶ 161); (Def. 56.1 Resp. at ¶ 161). Once outside, Plaintiff complied with officers' instructions to turn around, put his hands up, and walk backwards down the front steps. (Pl. 56.1 at ¶¶ 19–20); (Def. 56.1 Resp. at ¶¶ 19–20). After Plaintiff descended the front steps, police ordered Plaintiff to get on his knees, to which he complied. (Pl. 56.1 at ¶ 22); (Def. 56.1 Resp. at ¶ 22). Lieutenant Ewanciw observed that Plaintiff did not have a weapon. (Pl. 56.1 at ¶ 175); (Def. 56.1 Resp. at ¶ 175). Other officers observed that Plaintiff appeared highly intoxicated. (Pl. Ex. 6 at 2532KB).

The parties disagree on what happened next. Plaintiff claims that police officers shoved him to the ground, which caused him to experience pain in his knees. (Pl. 56.1 at ¶¶ 23, 25). Defendant denies this allegation. (Def. 56.1 Resp. at ¶¶ 23, 25). Plaintiff does not know who shoved him to the ground. (Warren Dep.[9] at 19). However, the parties agree that officers handcuffed Plaintiff at this point. (Pl. 56.1 at ¶ 24); (Def. 56.1 Resp. at ¶ 24). Lieutenant Ewanciw observed police officers checking Plaintiff to see if he had gunshot wounds. (Def. 56.1 at ¶ 27). Police officers asked Plaintiff whether he shot someone, if there was a gun, and whether anyone else was in the house.[10] (Def. 56.1 at ¶¶ 26, 30); (Warren Dep. at 20). The officers did not ask Plaintiff for identification. (Pl. 56.1 at ¶ 59); (Def. 56.1 Resp. at ¶ 59). The

---

[9] Refers to Plaintiff's deposition transcript. (Docket No. 26–6).

[10] Defendant disputes whether officers asked Plaintiff whether he shot someone. (Def. 56.1 at ¶ 30). The parties disagree as to whether Plaintiff responded to the officers' questions. (*Id.*); (Pl. 56.1 at ¶ 27).

parties disagree as to whether police learned Plaintiff's name at this time. (Pl. 56.1 at ¶ 60); (Def. 56.1 Resp. at ¶ 60).

Once outside, Plaintiff repeatedly requested an ambulance. (Pl. 56.1 at ¶ 28); (Def. 56.1 Resp. at ¶ 28). Plaintiff claims that after he was handcuffed, police dragged him towards a New York state police vehicle, threw him against the vehicle, and continued to search him. (Pl. 56.1 at ¶¶ 31–33).[11] Plaintiff does not know who threw him against the vehicle, (Warren Dep. at 23), but claims that the officers acted at Lieutenant Ewanciw's direction, (Warren Aff.[12] at ¶ 8). During this time, paramedics waited for police clearance to treat Plaintiff. (Def. Ex. D).[13] At approximately 3:15 p.m., paramedics treated Plaintiff and escorted him to an ambulance while still handcuffed. (*Id.*); (Pl. 56.1 at ¶¶ 44–48); (Def. 56.1 Resp. at ¶¶ 44–48). Plaintiff's clothing on his upper torso was removed to check for any injuries, and none were found. (Def. 56.1 at ¶ 42); (Pl. 56.1 Resp. at ¶ 42). The paramedics noted that Plaintiff complained of weakness, dehydration, nausea, headache, and vomiting. (Def. 56.1 at ¶ 42); (Pl. 56.1 Resp. at ¶ 42). Plaintiff's medical records state that Plaintiff exhibited signs of tachypnea and hyperglycemia. (*Id.*). While Plaintiff received treatment, police continued to ask Plaintiff whether there were any weapons in his residence, to which Plaintiff did not respond. (Def. 56.1 at ¶ 41). At approximately 3:31 p.m., paramedics transported Plaintiff to Orange Regional Medical Center. (Def. 56.1 at ¶ 43); (Pl. 56.1 Resp. at ¶ 43). Sergeant Khalil accompanied Plaintiff in the ambulance because police had not yet ruled out whether Plaintiff was a suspect in the reported shootings. (Def. 56.1 at ¶ 44); (Ewanciw Dep. at 63). Sergeant Khalil removed the handcuffs from one of Plaintiff's wrists and cuffed it to a stretcher so that Plaintiff could receive treatment.

---

[11] Defendant denies this these allegations. (Def. 56.1 at ¶¶ 31–33).

[12] Refers to the affidavit signed by Plaintiff. (Docket No. 28).

[13] Refers to Plaintiff's Mobile Life medical records. (Docket No. 17–2).

(Warren Dep. at 29). During the ride in the ambulance, paramedics determined that Plaintiff was suffering from diabetic shock. (Def. 56.1 at ¶ 45); (Pl. 56.1 Resp. at ¶ 45).

After Plaintiff left the scene, police continued to order anyone inside Plaintiff's residence to exit. (Def. 56.1 at ¶ 47). After receiving no response, officers forcibly entered Plaintiff's residence at Lieutenant Ewanciw's direction to determine whether there were any injured individuals. (Def. 56.1 at ¶ 47); (Ewanciw Dep. at 64). The officers searched Plaintiff's residence without incident, found no injured individuals, and exited thereafter. (Def. 56.1 at ¶ 47); (McDonald Aff.[14] at ¶ 2, Def. Ex. B). At some point, police dispatch relayed Plaintiff's medical condition to Lieutenant Ewanciw, but indicated that they were still investigating a possible connection between Ms. Pla's 911 call and the Otisville incident. (Pl. Ex. 6 at 3297KB). At 4:10 p.m., Sergeant Khalil received a call from Lieutenant Ewanciw confirming that Plaintiff's residence had been cleared. (Def. 56.1 at ¶ 46); (Pl. 56.1 Resp. at ¶ 46). After this, Sergeant Khalil removed the handcuffs from Plaintiff and left the hospital. (Warren Dep. at 38).

Plaintiff remained in the hospital for eleven days and received treatment related to his diabetes diagnosis. (Pl. 56.1 at ¶¶ 275–76); (Def. 56.1 Resp. at ¶¶ 275–76). However, the incident did not adversely affect Plaintiff's diabetic condition. (Def. 56.1 at ¶ 50); (Pl. 56.1 Resp. at ¶ 50). The incident did not cause any physical injury to Plaintiff other than pain to his knees. (*Id.*). Further, Plaintiff's physical therapy stemming from his knee surgery was not increased. (*Id.*). Plaintiff claims that the incident left him emotionally distraught. (Pl. 56.1 at ¶ 274); (Def. 56.1 Resp. at ¶ 274). However, Plaintiff sought no treatment or counseling for his alleged emotional injuries. (Def. 56.1 at ¶ 50); (Pl. 56.1 Resp. at ¶ 50).

---

[14] Refers to the affidavit signed by Middletown Police Officer Michael McDonald. (Docket No. 18).

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party bears the burden of demonstrating that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583(LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012) (internal quotation and citation omitted).

In reviewing a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the [non-moving] party" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150–51 (2000). The Court may not weigh the evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

The moving party bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). If the moving party meets this initial burden, the burden then shifts to the non-moving party to "present evidence sufficient to satisfy every element of the claim." *Id.* "The non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing

that there is a genuine issue for trial,'" *id.* (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 249–50), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-moving party fails to establish the existence of an essential element of the case on which it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

Parties moving for and opposing summary judgment in the Southern District of New York must also submit short and concise statements of facts, supported by evidence that would be admissible at trial. Local Civ. R. 56.1. The opposing party must specifically controvert the moving party's statement of material facts, or the moving party's facts will be deemed admitted for purposes of the motion. Local Civ. R. 56.1(c); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."). However, uncontested facts cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement; the Court is free to disregard the assertion in the absence of citations or where the cited materials do not support the factual assertions in the statements. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Nevertheless, the Court is "not required to consider what the parties fail to point out." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (internal quotation marks and citation omitted).

## III. DISCUSSION

### A. John Doe Defendants

The Complaint identifies ten John Does and a Sergeant "Sammy" Doe as defendants. (Docket No. 1). Counsel for Defendant states that Lieutenant Ewanciw is the only remaining defendant because Plaintiff's counsel advised that he "is not going to proceed with actually

naming any of these persons." (Smith Aff.[15] at 1, n. 1). Plaintiff did not respond to this contention.

"Using Doe in place of specifically naming a defendant does not serve to sufficiently identify the defendant." *Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). "Where a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the [defendant's] name . . . the plaintiff simply cannot continue to maintain a suit against the John Doe defendant. *Id.* (internal quotation marks and citation omitted) (alteration in original). Here, Plaintiff initiated the instant action on October 26, 2015, (Docket No. 1), over three years ago, and discovery has long since closed. The record shows no efforts undertaken by Plaintiff to identify or replace the John Doe defendants. Accordingly, Plaintiff's claims against the John Doe defendants are dismissed without prejudice. *See Blake v. Race*, 487 F. Supp. 2d 187, 192, n. 1 (E.D.N.Y. 2007) (dismissing claims against John Doe defendants without prejudice on summary judgment because plaintiff had "an opportunity to pursue discovery to identify the unknown defendants but failed to do so").

## B. Unlawful Detention

Plaintiff claims that Defendant violated his Fourth Amendment right to be free from unlawful seizures when he was handcuffed for more than an hour after he exited his residence. (Pl. Br. at 1–8). Defendant contends that the seizure was limited to a *Terry* stop. (Def. Br. at 2–7). Defendant further argues that if the detention ripened into an arrest, probable cause existed to arrest Plaintiff, or in the alternative, Defendant is entitled to qualified immunity. (*Id.* at 7–9).[16]

---

[15] Refers to the affirmation signed by Alex Smith, Esq. (Docket No. 17).

[16] The Court does not address Lieutenant Ewanciw's personal involvement, supervisory liability, or lack thereof in any of the alleged constitutional violations because Defendant does not raise the issue. *See Wilson v. Calderon*, No.

### i. Standard

"Police stops fall into two categories: arrests and *Terry* stops." *Grice v. McVeigh*, 873 F.3d 162, 166–67 (2d Cir. 2017). Under the Fourth Amendment, a *Terry* stop is a brief investigatory detention, which police may conduct "as long as the officer has reasonable suspicion 'that the person to be detained is committing or has committed a criminal offense.'" *United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016) (quoting *United States v. Bailey*, 743 F.3d 322, 331 (2d Cir. 2014)). "The suspicion must derive from specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting wrongdoing." *Id.* (internal quotation marks and citation omitted). "In assessing the reasonableness of an officer's suspicion," courts must consider "'the totality of the circumstances' and must 'evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" *Id.* (quoting *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000)).

In determining whether a *Terry* stop is so intrusive as to ripen into an arrest, courts within the Second Circuit consider:

> the amount of force used by police, the need for such force, and the extent to which the individual's freedom of movement was restrained, and in particular such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used.

*Grice*, 873 F.3d at 167 (quoting *United States v. Perea*, 986 F.2d 633, 645 (2d Cir. 1993)). "A critical factor in evaluating the intrusiveness of a stop is the length of the detention." *United States v. Glover*, 957 F.2d 1004, 1011 (2d Cir. 1992). However, "it is a highly context-sensitive"

14 Civ. 6209(GBD)(GWG), 2017 WL 2881153, at *13, n.12 (S.D.N.Y. July 6, 2017), *report and recommendation adopted*, 2017 WL 3209148 (S.D.N.Y. July 27, 2017).

consideration, and "the Supreme Court has refused to adopt any rigid temporal limitation." *Farag v. United States*, 587 F. Supp. 2d 436, 456 (E.D.N.Y. 2008).

Unlike a *Terry* stop, arrests require probable cause. *Grice*, 873 F.3d at 167. "Probable cause to arrest exists 'when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 610 (S.D.N.Y. 2013) (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)). "Whether or not an officer had probable cause to make an arrest is a question of what the officer knew at the time of the arrest and whether she or he was reasonable in relying on that knowledge." *Coyle v. Coyle*, 354 F. Supp. 2d 207, 211 (E.D.N.Y. 2005) (internal quotation marks and citation omitted), *aff'd*, 153 Fed. Appx. 10 (2d Cir. 2005).

Qualified immunity may also shield police officers from liability. "The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Bradway v. Gonza*les, 26 F.3d 313, 317–18 (2d Cir. 1994) (internal quotation marks and citations omitted). The latter standard is commonly referred to as "arguable probable cause," *Jackson v. City of New York*, 939 F. Supp. 2d 219, 232 (E.D.N.Y. 2013), "which exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Matthews v. City of New York*, 889 F. Supp. 2d 418, 437 (E.D.N.Y. 2012) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). "Thus, even if an officer is mistaken, and the arrestee did not commit the crime, the officer will not be held liable if he acted reasonably and in good

faith." *Id.* (internal quotation marks and citation removed). However, "[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).

### ii. Application

The record here demonstrates that reasonable suspicion existed to detain Plaintiff for an investigatory detention. However, material issues of fact exist as to whether Plaintiff's initial detention ripened to an arrest supported by probable cause.

After responding to Plaintiff's residence, the totality of the circumstances provided police with an "objective basis for suspecting wrongdoing." *Compton*, 830 F.3d at 61. The officers reasonably believed that someone was suffering from a gunshot wound inside Plaintiff's residence, and the location and identity of the assailants were unknown. (*See* Pl. Ex. 6 at 1485KB). Additionally, the 911 caller represented that Plaintiff did not want the police to respond. (*Id.* at 1360KB). Upon arrival, officers noticed furtive movements inside Plaintiff's residence. (Def. 56.1 at ¶ 19). Lieutenant Ewanciw observed a white vehicle with an out-of-state license plate in the driveway, which strengthened the possible connection to the Otisville shooting. (Def. 56.1 at ¶ 21). Further, Plaintiff exited after police shouted the name "Jerome Mack." (Pl. 56.1 at ¶ 15). The inferences drawn from these facts provided Lieutenant Ewanciw with a reasonable basis to detain Plaintiff and investigate his role, if any, in the reported shootings. *See United States v. Newton*, 369 F.3d 659, 675 (2d Cir. 2004) (handcuffing a potentially armed suspect to search him for a firearm was not an arrest).

However, factual issues remain as to whether Plaintiff's detention ripened into an arrest after he was handcuffed. *See United States v. Tehrani*, 49 F.3d 54, 58 (2d Cir. 2005) ("At what point a permissible investigative detention ripens into an arrest is a question of fact . . .. "). While "[h]andcuffing is ordinarily not incident to a *Terry* stop . . . a police officer 'faced with the

possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists.'" *Grice*, 873 F.3d at 167 (quoting *United States v. Alexander*, 907 F.2d 269, 272 (2d Cir. 1990)). "In certain unusual circumstances," the Second Circuit has held that "handcuffing a suspect to investigate a reasonable suspicion does not transform a *Terry* stop into an arrest." *Id.* at 167–68 (collecting cases). Here, the officers were still investigating Plaintiff's role in the alleged shooting reported by the 911 caller and the Otisville shooting when Plaintiff was handcuffed. *See Newton*, 369 F.3d at 675. Moreover, the officers' intent to handcuff Plaintiff for their own protection and the safety of bystanders is evidenced by their actions to secure the outside perimeter before encountering Plaintiff. (Def. 56.1 at ¶ 18); (Def. Ex. D); *see United States v. Vargas*, 369 F.3d 98, 102 (2d Cir. 2004) ("[A]lthough under ordinary circumstances, drawing weapons and using handcuffs are not part of a *Terry* stop, intrusive and aggressive police conduct is not an arrest when it is a reasonable response to legitimate safety concerns on the part of the investigating officers.") (internal alteration and quotation marks omitted). As such, handcuffing Plaintiff did not automatically ripen his detention into an arrest.

However, the parties dispute the amount of force used to detain Plaintiff after he was handcuffed. Plaintiff alleges that the officers dragged him to the corner of his property, threw him against a police vehicle, and continued to search him. (Pl. 56.1 at ¶¶ 31–33). The need for such force exceeds the scope of a *Terry* stop because Plaintiff was compliant and unarmed. *See Sherman v. Holt*, No. 6:12-CV-292 (ATB), 2013 WL 6506475, at *5 (N.D.N.Y. Dec. 12, 2013) (handcuffing exceeded the scope of a permissible *Terry* stop where plaintiff demonstrated that she was compliant and possessed no weapon). On the other hand, Defendant alleges that Plaintiff was merely escorted away from the residence without continued questioning. (Def. 56.1

at ¶¶ 28, 32). The contrasting versions of the intrusiveness of the stop create a material issue of fact as to whether Plaintiff's initial detention ripened into an arrest. *See Perea*, 986 F.2d at 645.

Defendant argues that the facts in *Grice v. McVeigh* are both analogous and instructive. 873 F.3d 162. In *Grice*, a sixteen-year-old train enthusiast was stopped and handcuffed for 33 minutes after police received a 911 call that someone was at a rail crossing holding a cellphone and a suspicious electronic device with an antenna, which turned out to be a radio scanner. *Id.* at 164–65. The Second Circuit held that plaintiff's stop did not ripen into an arrest because the officer was initially alone, and he responded to an unusual security threat. *Id.* at 168. While Defendant is correct that both *Grice* and the instant matter share similarities, there are several notable distinctions. Unlike *Grice*, the officers who responded to 31 Wickham Avenue greatly outnumbered Plaintiff. (*See* Def. 56.1 Resp. at ¶ 171)*; Kennedy v. City of New York*, No. 07 Civ. 10622 (NRB), 2010 WL 1779235, at *6 (S.D.N.Y. Apr. 26, 2010) (finding that plaintiff's detention turned into a de facto arrest in part because the officers outnumbered the plaintiff). Further, after detaining Plaintiff, officers quickly confirmed that Plaintiff was not armed. (Pl. 56.1 at ¶ 175); (Def. 56.1 at ¶ 27); *see Perea*, 986 F.2d at 645 (noting that in assessing whether the degree of restraint was too intrusive, courts consider "whether the target of the stop was suspected of being armed"). Additionally, Plaintiff was handcuffed for over an hour, forty minutes of which occurred after he was placed inside the ambulance. Once in the ambulance, the initial need to handcuff Plaintiff for the safety of the bystanders in the area diminished. *See United States v. Pena*, No. 18-CR-637(JSR), 2019 WL 168529, at *7 (S.D.N.Y. Jan. 11, 2019) (finding that thirty minute detention in handcuffs "ceased to be 'the least intrusive means reasonably available to effect [the officers'] legitimate investigative purpose'" where risks attendant to the detention were reduced) (quoting *Newton*, 369 F.3d at 674). Finally, the parties

in the instant matter disagree on the amount of force used after Plaintiff was handcuffed, while, in *Grice*, no dispute existed because there was an audio recording of the encounter.

Furthermore, the Court cannot conclude as a matter of law that probable cause existed to arrest Plaintiff, or that Lieutenant Ewanciw is entitled to qualified immunity. The record contains critical factual disputes. For example, the parties dispute what the responding officers asked Plaintiff after he exited his residence and whether Plaintiff responded. (*See* Def. 56.1 Resp. at ¶¶ 26–27, 33–34). The record is similarly unclear when Lieutenant Ewanciw learned Plaintiff's identity. Moreover, "[q]ualified immunity should not be granted where, as here, there are factual disputes as to the underlying events, namely when Plaintiff was arrested." *Vanderwoude v. City of New York*, No. 12 CIV. 9046(KPF), 2014 WL 2592457, at *13 (S.D.N.Y. June 10, 2014); *see Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (holding that a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity where the circumstances are in dispute). In short, issues of material fact foreclose a finding of probable cause or qualified immunity as a matter of law.

Accordingly, the Court denies Defendant's motion for summary judgment on Plaintiff's unlawful detention claim.

## C. Excessive Force

Plaintiff alleges that police used excessive force when they pushed him to the ground, dragged him to the corner, and threw him up against a police vehicle. (Pl. Br. at 8–10). Plaintiff also alleges that Lieutenant Ewanciw failed to intervene.[17] (*Id.*). Defendant argues, *inter alia*,

---

[17] To the extent Plaintiff seeks to bring a separate failure-to-intervene claim against Lieutenant Ewanciw, the Court cannot consider it because he did not plead this claim in his Complaint. "[I]t it is inappropriate to consider claims not pleaded in the complaint in opposition to summary judgment." *Scott v. City of New York Dep't of Correction*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009) (internal quotation marks and citation omitted), *aff'd*, 445 F. App'x 389 (2d Cir. 2011). Here, Plaintiff's Complaint fails to allege that Lieutenant Ewanciw, or any defendant for that matter, failed to intervene to prevent a constitutional violation. (*See generally* Docket No. 1). Accordingly, the Court will not consider Plaintiff's failure-to-intervene claim. *See, e.g., Flynn v. N.Y. State Div. of Parole*, 620 F. Supp. 2d 463,

that the alleged force was not excessive as a matter of law because Plaintiff did not suffer a physical injury. (Def. Br. at 10–12).

### i. Standard

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion." *Rogoz v. City of Harford*, 796 F.3d 236, 246 (2d Cir. 2015) (internal quotation marks and citation omitted). However, "[b]ecause the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa." *Gutierrez v. City of New York*, No. 13 Civ. 3502(JGK), 2015 WL 5559498, at *6 (S.D.N.Y. Sept. 21, 2015) (internal quotation marks and citation omitted); *see Jones v. Parmley*, 465 F.3d 46, 62 (2d Cir. 2006) (Sotomayor, J.) (rejecting argument that "any force employed by a police officer would be unlawful so long as probable cause did not exist").

"A claim that excessive force was used in the course of a seizure is subject to an objective test of reasonableness under the totality of the circumstances, which requires consideration of the specific facts in each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000). "Furthermore, to prevail on an excessive force claim, Plaintiff must have suffered an actual injury that resulted from Defendants' use of force." *Youngblood v. City of Mount Vernon*, No. 14 Civ. 10288(VB)(JCM), 2017 WL 7804731, at *7 (S.D.N.Y. Dec. 29, 2017), *report and recommendation adopted*, 2018 WL 1114760 (S.D.N.Y. Feb. 26, 2018); *see Landy v. Irizarry*, 884 F. Supp. 788, 799, n. 14 (S.D.N.Y. 1995) ("An arrestee must prove some injury, even if insignificant, to prevail in an

---

489 n. 32 (S.D.N.Y. 2009) ("[Plaintiff] raises this claim for the first time in her opposition papers to the instant motion. Therefore, we will not consider this claim as a basis for liability here.").

excessive force claim."). "[A] plaintiff need not sustain severe injury to maintain a claim that the use of force was objectively unreasonable under the Fourth Amendment." *Davenport v. Cty. of Suffolk*, No. 99-CV-3088 JFB, 2007 WL 608125, at *10 (E.D.N.Y. Feb. 23, 2007). However, "the force used by the law enforcement officer must generally be more than *de minimis* for a claim to be actionable." *Antic v. City of New York*, 273 F. Supp. 3d 445, 458 (S.D.N.Y. 2017), *aff'd*, 740 F. App'x 203 (2d Cir. 2018). "Moreover, emotional distress unaccompanied by any physical injury has been held to be insufficient to support a claim for excessive force." *Cole v. Rogers*, No. CV-14-3216(JFB)(AKT), 2017 WL 1157182, at *8 (E.D.N.Y. Mar. 6, 2017), *report and recommendation adopted*, 2017 WL 1155002 (E.D.N.Y. Mar. 27, 2017).

**ii. Application**

Plaintiff's excessive force claim fails as a matter of law. When asked whether he suffered a physical injury from officers' alleged use of force, Plaintiff stated, "[a]s far as my knee being pushed to the ground certainly didn't help" because he "fell back a little" on the physical therapy he was doing as a result of knee surgery for an unrelated incident. (Warren Dep. at 34–35). In addition, Plaintiff's doctor did not find any injury to Plaintiff's knees stemming from this incident, (*id.*), and Plaintiff's physical therapy was not increased. (Def. 56.1 at ¶ 50); (Pl. 56.1 Resp at ¶ 50). Furthermore, this incident did not adversely affect Plaintiff's diabetic condition in any way. (*Id.*). When asked whether he was claiming any other physical injury from this incident, Plaintiff unequivocally answered, "No." (Warren Dep. at 35). The extent of Plaintiff's injuries is *de minimis* and does not amount to a constitutional violation. *See Antic*, 273 F. Supp. 3d at 458 ("a de minimis injury can serve as conclusive evidence that de minimis force was used") (internal quotation marks and alteration omitted); *Warheit v. City of New York,* No. 02 Civ. 7345(PAC), 2006 WL 2381871, at *8 (S.D.N.Y. Aug. 15, 2006) ("[Defendant's] action caused no physical injury to [plaintiff] . . .. Any force was *de minimis,* and therefore does not

amount to a constitutional violation."). Plaintiff also claims he suffered emotional trauma. (*See* Pl. 56.1 at ¶¶ 274–79) (noting that this incident left Plaintiff "emotionally distraught," "publicly humiliated," and with "a strong fear of police officers"). That claim alone is insufficient to create an actionable excessive force claim. *See Roundtree v. City of New York*, 778 F. Supp. 614, 621 (E.D.N.Y. 1991) (dismissing excessive force claim where plaintiff alleged emotional pain and suffering when officers pushed him into a police vehicle, but alleged no physical injuries). Accordingly, Defendant is entitled to summary judgment on Plaintiff's excessive force claim.

## D. Deliberate Indifference

Plaintiff alleges that Lieutenant Ewanciw was deliberately indifferent to his medical needs when he prevented the paramedics from treating Plaintiff. (Pl. Br. at 11). Defendant denies this allegation. (Def. Br. at 12).

### i. Standard

A pre-trial detainee's claim for deliberate indifference to serious medical needs is evaluated under the Due Process Clause of the Fourteenth Amendment. *Davis v. McCready*, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017) (citing *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)). "[W]hen a claim arises under the Fourteenth Amendment, 'the pre-trial detainee must prove that the defendant-official acted intentionally . . . or recklessly failed to act with reasonable care . . . even though the defendant-official knew, or should have known that the condition posed an excessive risk to health or safety.'" *Ryan v. Cty. of Nassau*, No. 12-CV-5343(JS)(SIL), 2018 WL 354684, at *3 (E.D.N.Y. Jan. 10, 2018) (quoting *Darnell*, 849 F.3d at 35). To establish a claim for deliberate indifference to serious medical needs under the Fourteenth Amendment, a plaintiff must satisfy both objective and *mens rea* standards. *Davis*, 283 F. Supp. 3d at 116.

The objective standard has two prongs. "The first prong is whether the [detainee] was actually denied adequate medical care." *James v. Correct Care Sols.*, No. 13-CV-0019(NSR),

2013 WL 5730176, at *4 (S.D.N.Y. Oct. 21, 2013) (citing *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)); *see Valdiviezo v. Boyer*, No. 17-1093, 2018 WL 5096345, at *2 (2d Cir. Oct. 18, 2018) (noting that "[f]or Fourteenth Amendment claims, this Court applies the same standard as the Eighth Amendment to determine whether an alleged action is objectively serious enough to be a constitutional violation.") (summary order). The second prong of the objective standard is "whether the 'medical condition is sufficiently serious.'" *Figueroa v. Cty. of Rockland*, No. 16-CV-6519(NSR), 2018 WL 3315735, at *5 (S.D.N.Y. July 5, 2018) (quoting *Salahuddin*, 467 F.3d at 280). To establish that the medical condition was sufficiently serious, a plaintiff must show "the existence of 'a condition of urgency, one that may produce death, degeneration, or extreme pain[.]'" *Id.* at *4 (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). However, "where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower . . . [and] the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Salahuddin*, 467 F.3d at 280 (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003).

Under the *mens rea* standard, courts must determine "whether an objectively reasonable person in Defendant's position would have known, or should have known, that Defendant's actions or omissions posed an excessive risk of harm to [Plaintiff]." *Davis*, 283 F. Supp. 3d at 120 (citing *Darnell*, 849 F.3d at 35; *Lloyd*, 246 F. Supp. 3d at 719); *see Lloyd v. City of New York*, 246 F. Supp. 3d 704, 718 (S.D.N.Y. 2017) ("[t]he reasoning of *Darnell* applies equally to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment."). "In other words, the second element of a deliberate indifference claim under the Fourteenth Amendment 'is defined objectively,' and a plaintiff is not required to show subjective awareness by the defendant that '[his] acts (or omissions) have subjected the pre-trial detainee to a

substantial risk of harm.'" *Ryan*, 2018 WL 354684, at *3 (quoting *Darnell*, 849 F.3d at 35) (alteration in original). Nevertheless, "[a] detainee must prove that an official acted intentionally or recklessly, and not merely negligently." *Darnell*, 849 F.3d at 36.

**ii. Application**

While diabetic shock can constitute a sufficiently serious medical condition under the objective standard, *see Anderson v. City of New York,* No. 1:14-CV-5478(FRB)(VMS), 2018 WL 1258785, at *4 (E.D.N.Y. Mar. 12, 2018), the evidence in the instant matter does not demonstrate that Lieutenant Ewanciw acted with the requisite state of mind necessary to establish Plaintiff's claim. First, Lieutenant Ewanciw had no reason to believe that Plaintiff was suffering from diabetic shock requiring prompt medical attention. While Plaintiff repeatedly requested an ambulance after he exited his home, there is no evidence suggesting that Plaintiff informed police that he was in diabetic shock, or that there were obvious physical manifestations of the same. *See Omor v. City of New York*, No. 13-CV-2439(RA), 2015 WL 857587, at *7 (S.D.N.Y. Feb. 27, 2015) (noting that officers were not aware that plaintiff's diabetic condition posed an excessive risk to his health in part because plaintiff did not inform the officers that he had diabetes). In fact, Plaintiff himself did not know at the time that he suffered from diabetes; he was diagnosed later that day. (Def. 56.1 at ¶ 33); (Pl. 56.1 Resp. at ¶ 33). Nor should an objectively reasonable person in Lieutenant Ewanciw's position know that a fifteen-minute delay in receiving treatment would lead to serious medical complications. *See Darnell*, 849 F.3d at 35. Given the information relayed at the time—that someone had recently been shot inside Plaintiff's residence, and the location and identity of the assailants were unknown—Lieutenant Ewanciw did not act recklessly or knowingly disregard Plaintiff's serious medical needs, nor did he needlessly prolong the paramedics' treatment of Plaintiff. At most, Lieutenant Ewanciw's conduct arguably amounts to negligence, which does not give rise to a constitutional claim. *See*

*id.* at 36. Accordingly, because Lieutenant Ewanciw's conduct does not establish as a matter of law that he acted with the requisite state of mind necessary to find deliberate indifference, he is entitled to summary judgment.

### E. Unlawful Entry and Search

Plaintiff alleges that officers unlawfully entered and searched his residence at Lieutenant Ewanciw's direction after he was transported to the hospital. (Pl. Br. at 15–21). Defendant asserts, *inter alia*, that the entry was privileged under the emergency aid doctrine, or that Lieutenant Ewanciw is entitled to qualified immunity. (Def. Br. at 20–24).

### i. Standard

"The core premise underlying the Fourth Amendment is that warrantless searches of a home are presumptively unreasonable." *United States v. Simmons*, 661 F.3d 151, 156 (2d Cir. 2011) (citing, *e.g., Kentucky v. King*, 563 U.S. 452, 459 (2011)). The warrant requirement is subject to "carefully delineated" exceptions and "the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Loria v. Gorman*, 306 F.3d 1271, 1284 (2d Cir. 2002) (internal quotation marks and citation omitted). "One well-recognized exception applies when 'the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment'" *King*, 563 U.S. at 460 (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)). "When police officers seek to justify a warrantless search on the basis of exigent circumstances, they need 'probable cause plus exigent circumstances in order to make a lawful entry into a home.'" *Scott v. City of Mount Vernon*, No. 14-CV-4441 (KMK), 2017 WL 1194490, at *10 (S.D.N.Y. Mar. 30, 2017) (quoting *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002)). "Probable cause to enter a home exists when there is 'a fair probability that contraband

or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The Second Circuit has instructed that the following non-exhaustive factors should be considered in determining whether exigent circumstances justifying a warrantless entry are present:

> (1) the gravity or violent nature of the offense with which the subject is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause ... to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

*Loria*, 306 F.3d at 1284 (quoting *United States v. Fields*, 113 F.3d 313, 323 (2d Cir. 1997)). However, "[t]he core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer, to believe that there was an urgent need to render aid or take action." *Simmons*, 661 F.3d at 157 (internal quotation marks and citation omitted).

The emergency aid exception is related to the exigent circumstances doctrine. *See Figueroa v. Mazza*, No. 11-CV-3160(ARR)(CLP), 2017 WL 1194648, at *8 (E.D.N.Y. Mar. 30, 2017) (citing *King*, 563 U.S. at 460). "This exception provides that law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id.* (quoting *Michigan v. Fisher*, 558 U.S. 45, 47 (2009)) (internal quotation marks omitted). "[T]he emergency aid exception does not necessarily involve a suspicion of wrongdoing at the moment that the police take action, and accordingly, does not consider probable cause or the availability of a warrant." *Id.* (internal quotation marks and citation omitted). "Instead, the emergency aid exception applies where there was an objectively reasonable basis for believing that medical assistance was needed, or persons were in danger." *Id.* (quoting *Fisher*, 558 U.S. at 49) (internal quotation marks omitted).

## ii. Application

Viewing the totality of the circumstances in the light most favorable to Plaintiff, it was objectively reasonable for Lieutenant Ewanciw to believe that there was an urgent need to enter Plaintiff's residence under the emergency aid exception. Police had responded to a 911 call placed by an individual familiar with Plaintiff who stated that someone in Plaintiff's residence was suffering from a gunshot wound. *See Anthony v. City of New York*, No. 00 Civ. 4688 (DLC), 2001 WL 741743, at *4 (S.D.N.Y. July 2, 2001) (holding that warrantless entry of apartment was reasonable where 911 call led officers to believe that there was an armed man who was committing a violent crime); *Soller v. Boudreux*, No. 12-CV-0167 (SJF)(SIL), 2015 WL 500492, at *12 (E.D.N.Y. Feb. 3, 2015) (concluding that officers' entry and search was objectively reasonable pursuant to the emergency aid doctrine where officers responded to a 911 call from an identifiable person expressing concern that the occupants of a residence were in need of assistance). The fact that Plaintiff did not actually say he was shot is immaterial. It only matters what the officers knew at the time they entered the residence—that the 911 caller reported that someone in the residence had been shot. Moreover, the 911 caller stated that the assailants had possibly left. This statement does not foreclose the possibility that the injured person and/or the assailants were still in the premises.

The responding officers' observations on the scene further corroborate the gravity of the situation. Lieutenant Ewanciw noted that the vehicle in the driveway at 31 Wickham Avenue "matched or was similar to the vehicle" reportedly used in the Otisville shooting earlier that day. (Def. 56.1 at ¶ 21); (Ewanciw Dep. at 14). Plaintiff's condition and alleged statements upon exiting his residence do not vitiate the reasonableness of the officers' entry. In fact, because Plaintiff was not shot, there remained a possibility that someone else in the residence had been shot. Under the circumstances here, the officers' entry was objectively reasonable given the

information available and the high degree of danger posed by a possible victim or gunman inside Plaintiff's residence. *See Ostroski v. Town of Southold,* 443 F. Supp. 2d 325, 344 (E.D.N.Y. 2006) (finding that officers' entry was reasonable under the emergency aid exception to find and secure weapons to prevent harm to the occupants); *Soller*, 2015 WL 500492, at *12 ("Officers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception, and the court must refrain from replacing the objective inquiry into appearances with a hindsight determination that there was in fact no emergency.") (internal quotation marks, alterations and citations omitted).

Furthermore, the search of Plaintiff's residence was reasonable because it was limited in scope and duration. "Where entry into a home is warranted under the exigent circumstances exception, the resulting search 'must be strictly circumscribed by the exigencies which justify its initiation.'" *United States v. Ashburn*, No. 11-CR-303(NGG), 2014 WL 1800409, at *5 (E.D.N.Y. May 6, 2014) (quoting *United States v. Klump*, 536 F.3d 113, 118 (2d Cir. 2008)). Here, the officers' entry into Plaintiff's residence was necessitated by a need to ensure that no one else was injured and that there were no assailants present. (Def. 56.1 at ¶ 47). Once the officers confirmed that no one else was present or required immediate medical assistance, they exited Plaintiff's residence. (*Id.*); (McDonald Aff., at ¶ 2, Ex. B). Under these circumstances, the officers' search "did not impermissibly exceed that which was objectively necessary to ensure that a victim was not injured inside." *Ashburn*, 2014 WL 1800409 at *5 (holding that officers' brief but thorough search of bedroom to ensure that there were no victims was reasonable where officers' entered the home to ensure that nobody had been injured by an earlier gunshot).

Moreover, even if Lieutenant Ewanciw did not have grounds to direct officers to enter and search Plaintiff's residence under the emergency aid exception, he is entitled to qualified

immunity. "[T]o determine whether an officer who relies on the emergency aid exception deserves qualified immunity, [courts] must determine if, given the circumstances confronting that officer, it is at least debatable that he had an 'objectively reasonable basis' for believing that an individual inside a home needed medical assistance." *Batt v. Buccilli*, 725 F. App'x 23, 26 (2d Cir. 2018) (summary order) (quoting *Coollick v. Hughes*, 699 F.3d 211, 220 (2d Cir. 2012)). Here, given the known identity of the 911 caller, the substance of the call and the officers' observations on the scene, it is at least debatable whether further individuals inside Plaintiff's residence needed medical assistance. At a minimum, the information available was "sufficiently 'ambiguous'—and the potential consequences sufficiently 'serious'—as to make it (at least) arguable that [the officer's] trespass was proper." *Id.* at 27. Accordingly, Lieutenant Ewanciw is entitled to summary judgment on Plaintiff's unlawful entry and search claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in part and denied in part. The Clerk is respectfully requested to terminate the pending Motion. (Docket No. 14).

Dated: February 13, 2019
White Plains, New York

SO ORDERED:

_Judith C. McCarthy_
JUDITH C. McCARTHY
United States Magistrate Judge